IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SHERNAYNE JOHNSON, as next of kin and personal representative of the Estate of Debra Johnson, <br><br> Plaintiff, <br><br> v. <br><br> STATE OF TENNESSEE, WEST TN WARDEN JOHN FITZ, WEST TN STATE PENITENTIARY, and UNKNOWN CORRECTIONS OFFICERS, <br><br> Defendants. | No. 2:20-cv-02581-TLP-atc <br><br> JURY DEMAND |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS**

**BACKGROUND**

**I.  Factual Background**

This case arises from the brutal and tragic killing of Debra Johnson.  The Tennessee Department of Corrections (TDOC) employed Johnson.  (ECF No. 1 at PageID 1.)  And she lived and worked on the grounds of the West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee.  (*Id.*)  There, WTSP inmate Curtis Watson gained access to her home, sexually assaulted and strangled Johnson to death during her off-duty hours in August 2019.  (*Id.* at PageID 3.)

Plaintiff Shernayne Johnson, Debra Johnson's daughter, sues the State of Tennessee ("the State"), Warden John Fitz ("the Warden"), WTSP, and Unknown Corrections Officers claiming that they violated Johnson's Fourteenth Amendment rights and were negligent.  (*Id.* at PageID 1–

2.) In turn, Plaintiff contends that Defendants' actions contributed to Johnson's death. (*Id.*) For example, Defendants allegedly allowed Watson to roam the grounds of the prison inadequately supervised. (*Id.* at PageID 5.) And Plaintiff alleges that although inmate Watson had a violent history, Defendants granted him trusty status. (*Id.*)

Plaintiff describes the events leading up to Johnson's death. By her account, Watson had a history of violence towards women and had even made a sexual comment about Johnson to a fellow inmate. (*Id.*) An inmate then allegedly notified prison officials about that comment. (*Id.*) Despite Watson's status as a violent offender with a history of sexual violence, prison officials still granted him trusty status. (*Id.*)

On the morning of Johnson's death, Watson disappeared from his job post as a mechanic. (*Id.* at PageID 3.) He drove a golf cart to Johnson's home, sexually assaulted her, strangled her to death, and then escaped from the prison on a tractor. (*Id.*) His escape led to a 5-day man hunt before authorities caught him. (*Id.*) According to Plaintiff, the prison had no security cameras aimed at the victim's home, but an inmate reported that he saw Watson banging on Johnson's door on the morning he killed her. (*Id.* at PageID 3–4.) What is more, Plaintiff claims that an officer saw Watson's golf cart hidden in shrubbery beside Johnson's house hours before they discovered her body. (*Id.*) That officer then knocked on her door, but when she did not answer, he left the area rather than continue to investigate. (*Id.*)

In sum, Plaintiff contends that Defendants' actions (and inactions) led to an environment which allowed Watson to commit terrible crimes. (*Id.* at PageID 6.) Plaintiff claims Defendants knew that Watson was a threat but granted him trusty status anyway. (*Id.* at PageID 5.) And then they failed to monitor him. (*Id.*) Adding to that, Defendants allegedly failed to monitor Johnson's home, even though her job and her home on the prison grounds placed her in a

position of special risk. (*Id.* at PageID 6, 9.) What is more, Plaintiff alleges that TDOC "woefully understaffed" WTSP and that TDOC created a policy of downplaying inmate violence to keep statistics related to violence artificially low. (*Id.* at PageID 6–7.)

## II.     Plaintiff's Claims

First, Plaintiff sues under 42 U.S.C. § 1983, claiming Defendants violated Johnson's due process rights. (ECF No. 1 at PageID 7–9.) To explain, § 1983 allows a plaintiff to bring a *federal* claim against a *state* actor for violating his rights under the Constitution or a federal statute. *See* § 1983. Plaintiff sues under § 1983 claiming that Defendants fostered a state-created danger which violated Johnson's Fourteenth Amendment due process right to personal security and bodily integrity. (*Id.* at PageID 7.)

Next, Plaintiff asserts state law claims. She sues under Tennessee premises liability law, alleging that Defendants failed to keep the premises of the WTSP in safe condition. (*Id.* at PageID 9–10.) Plaintiff claims Defendants breached their duty of care to Johnson by failing to provide security and adequate monitoring on the premises. (*Id.*) And Plaintiff sues for negligence alleging Defendants failed to (1) operate the prison in a safe manner, (2) provide proper monitoring of violent inmates, (3) adequately train corrections officers, (4) adequately oversee inmate trusties, and (5) provide enough staff for the prison. (*Id.* at PageID 10–11.)

Defendants now move to dismiss under Fed. R. Civ. P. 12(b)(1). (ECF No. 9.) They argue that the Court should dismiss Plaintiff's § 1983 claim against the State of Tennessee, WTSP, and the Warden in his official capacity because the Eleventh Amendment's sovereign immunity applies to them. (*Id.* at PageID 28.) Defendants also argue that Plaintiff waived the opportunity to bring a § 1983 claim against the Warden in his individual capacity. (*Id.*) This is because the Plaintiff chose to sue first in the Tennessee Division of Claims and Risk

3

Management, according to Defendants.  (*Id.*)  And by filing her claim in that forum, she waived her right to do so here.

As for the state law claims against the State, WTSP, and the Warden in his official capacity, Defendants assert they are again entitled to sovereign immunity.  (*Id.* at PageID 29.)  And finally, they argue that Tenn. Code Ann. § 9-8-307(h) also provides immunity to the Warden in his individual capacity for the state law claims.  (*Id.*)  And so, Defendants ask the Court to dismiss all claims.  (*Id.*)  For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss.

## ANALYSIS

Defendants' immunity defenses are jurisdictional, and so, to begin with the Court has to determine whether it has jurisdiction over this case.

### I. Plaintiff's § 1983 Claim Against the State, WTSP, and the Warden in His Official Capacity

The Court will begin with Plaintiff's § 1983 claim and Defendants' Eleventh Amendment argument.  For starters, the Eleventh Amendment[1] guarantees that "nonconsenting States may not be sued by private individuals in federal court."  *Guertin v.* State, 912 F.3d 907, 936 (6th Cir. 2019).  And "[t]he sovereign immunity guaranteed by this Amendment deprives federal courts of subject-matter jurisdiction when a citizen sues his own State."  *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015).

So the Eleventh Amendment presents a jurisdictional question.  *Id.* ("Eleventh Amendment issues are jurisdictional in nature.").  And the plaintiff "bears the burden of

---

[1] The Amendment reads, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

4

establishing subject matter jurisdiction of the court over his claim." *Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 1993) (citing *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980)); *Abdalla v. Tenn. Dep't of Corr.*, No. 2:20-CV-02041, 2021 WL 27305, at *2 (W.D. Tenn. Jan. 4, 2021). Under Fed. R. Civ. P. 12(b)(1), a party may raise in a motion that the court lacks jurisdiction—what Defendants did here. (*See* ECF No. 9.) And so if Plaintiff fails to establish subject matter jurisdiction, the Court has to dismiss her claims. *Anderson v. Univ. of Tenn.*, No. 3:15-CV-00513, 2017 WL 499981, at *1 (E.D. Tenn. Feb. 7, 2017).

Again, the Eleventh Amendment bars suits brought by its own citizens unless the State waives its immunity or Congress overrides that immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Tennessee has not waived its immunity here. Tenn. Code Ann. § 20-13-102; *Berndt v. State of Tenn.*, 796 F.2d 879, 881 (6th Cir. 1986). And Congress has not revoked state immunity for § 1983 claims. *Hafer v. Melo*, 502 U.S. 21, 30 (1991). To explain, "[s]ection 1983 does not abrogate Eleventh Amendment immunity." *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017). Indeed, § 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will*, 491 U.S. at 66.

The Amendment's immunity also blankets state agencies and state officials sued in their official capacities for damages, because they are "arms" of the state. *Cady v. Arenac Cty.*, 574 F.3d 334, 342 (6th Cir. 2009) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)). The idea is that suing a state agency or officer in his official capacity is essentially the same as suing the state; any remedy would come from the State's purse. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("[T]he rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). As a result, "[i]t is well-established that a plaintiff cannot sue a state agency or

any of its employees in their official capacities for monetary damages." *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). And state officials acting in their official capacities are not even "persons" as required for Section 1983 liability. *Will*, 491 U.S. at 70–71.

In short, the Tennessee Department of Corrections and the prisons under its control are agencies of the State and entitled to immunity. *Wingo v. Tenn. Dept. of Corrs.*, 499 Fed. Appx. 453, 454 (6th Cir. 2012) (dismissing § 1983 claim against prison, because it was entitled to immunity as an agency of Tennessee). And the Warden, a state employee, in his official capacity is likewise immune from suit. *Smith-El v. Steward*, 33 Fed. Appx. 714, 716 (6th Cir. 2002) (holding that sovereign immunity barred monetary claims against Warden in his official capacity); *Rogers v. White*, No. 05-2470 B, 2006 WL 903727, at *2 (W.D. Tenn. Apr. 7, 2006) (same).

Even so, Plaintiff argues the Eleventh Amendment does not bar her § 1983 claim. (ECF No. 14 at PageID 62.) She contends that if the government has an unconstitutional *custom or policy*, then the government as an entity can be responsible under § 1983. (*Id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978))). But Plaintiff misses the mark. Plaintiff relies on *Monell*, the seminal case when the Supreme Court recognized that a *local* government—not a state—could be liable as a "person" under § 1983. *Will*, 491 U.S. at 70 ("[I]t does not follow that if municipalities are persons [under § 1983] then so are States. States are protected by the Eleventh Amendment while municipalities are not."); *see Monell*, 436 U.S. at 694 (holding that a plaintiff could not sue a *local* government under § 1983 unless it had executed a custom or policy). And so, Plaintiff's argument on this point fails.

Plaintiff also seems to argue that the Eleventh Amendment is not a bar under the state-created danger doctrine. (ECF No. 14.) The Sixth Circuit has recognized a theory of state

6

liability where "state actors may be held liable if their 'affirmative acts . . . either create or increase the risk that an individual will be exposed to private acts of violence.'" *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017) (quoting *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998)).

But again, a § 1983 claim based on a state-created danger theory does not overcome Eleventh Amendment immunity. *Boler*, 865 F.3d at 410 (holding that Eleventh Amendment barred Plaintiff's state-created danger claim against the State of Michigan, two state departments, and the Governor). Plaintiff here alleges a state-created danger under § 1983 against the State, a state prison, and a warden in his official capacity. (ECF No. 14.) These are State defendants immune from suit in this situation. In short, Plaintiff's claims against those defendants simply cannot overcome Eleventh Amendment immunity. That said, conceivably, a plaintiff can sue an individual state actor under the state-created-danger theory.

All in all, the Court agrees with Defendants that, here, the Eleventh Amendment grants sovereign immunity to the State and to arms of the state such as WTSP and the Warden in his official capacity. Thus, the Court **DISMISSES** Plaintiff's § 1983 claim against Tennessee, WTSP, and Warden Fitz in his official capacity. Now the Court will turn to claims against Warden Fitz in his individual capacity.

## II.     Section 1983 Claim Against Warden in Individual Capacity

Simply put, Plaintiff's § 1983 claim against the Warden in his *individual* capacity does not offend the Eleventh Amendment. *Turker*, 157 F.3d at 457 ("A plaintiff . . . may sue state officials for monetary damages in their individual capacities under § 1983 without running afoul of the Eleventh Amendment."). But Defendants argue that Plaintiff waived her opportunity to sue the Warden in his individual capacity. (ECF No. 10 at PageID 44–45.) Again, this is a

jurisdictional question for the Court, and so, the Court will address the waiver question before assessing whether Plaintiff states a viable claim.

### A. Waiver

Defendants contend that Plaintiff waived all claims against the Warden in his individual capacity when she filed a worker's compensation claim first with the Tennessee Division of Claims and Risk Management ("the Division"). [2] If so, say Defendants, the Court does not have subject matter jurisdiction over this claim.

Under Tenn. Code Ann. § 9-8-307(b)[3], individuals may sue the State in the Tennessee Claims Commission, a Tennessee administrative agency created solely to hear claims against the State. In short, Tennessee waives its sovereign immunity and allows plaintiffs to sue it for damages under limited circumstances. But, as a trade-off, a plaintiff then waives her right to sue individual state employees in other forums based on the same act or omission. *Haley v. Univ. of Tenn.-Knoxville*, 188 S.W.3d 518, 524 (Tenn. 2006); *Setayesh v. Tydings*, No, 3:18-CV-00335, 2019 WL 1460882, at *3 (M.D. Tenn. Apr. 2, 2019).

The reasoning behind this structure is that, by waiving its sovereign immunity, the state gives plaintiffs "a deep pocket . . . that they would not otherwise be able to pursue." *Haley*, 188 S.W.3d at 524; *Laude v. Knowles*, 549 F. App'x 311, 314 (6th Cir. 2013). But in return, claimants waive something themselves—a federal cause of action against state employees over the same acts or omissions. *Estate of Drew v. Univ. of Tenn. Reg'l Med. Ctr. Hosp.*, No. 96-

---

[2] Through a statutory amendment in 2017, the state renamed the Division of Claims Administration to the Division of Claims and Risk Management. *See* 2017 Tenn. Pub. Acts, Ch. 271 § 1 (S.B. 623). *Sexton v. Hart*, No. M201801537COAR3CV, 2019 WL 1501123, at *2 (Tenn. Ct. App. Apr. 4, 2019).

[3] The statute reads, "[c]laims against the state filed pursuant to subsection (a) shall operate as a waiver of any cause of action, based on the same act or omission, which claimant has against any state officer or employee." § 9-8-307(b).

5481, 1997 WL 441752, at *2 (6th Cir. Aug. 5, 1997); *Haley*, 188 S.W.3d at 524.  And to be clear, in creating the Tennessee Claims Commission, the Tennessee legislature meant to provide an alternative forum for suits that plaintiffs would otherwise file in federal court under § 1983. *Shell v. State*, 893 S.W.2d 416, 419 (Tenn. 1995).

And so by filing a claim in the Tennessee Division of Claims Administration, a plaintiff waives her § 1983 action against all individuals whom she might otherwise have sued under § 1983 for the same acts or omissions.  *Lufkin v. Hamilton*, No. 3:09-CV-10, 2010 WL 908928, at *5 (E.D. Tenn. Mar. 12, 2010).  In exchange for the waiver of sovereign immunity, "[t]he *moment* the claim is filed with the Claims Commission, the Plaintiff has waived all other causes of action against any state officer or employee based on the same act or omission." *Haley*, 188 S.W.3d at 524 (emphasis added).  Once the plaintiff files the claim, she cannot undo the waiver "regardless of the subsequent disposition of the claim." *Id.*

So how does one bring a claim in the Claims Commission?  To bring a claim, the claimant must first file notice with the Division, which Defendants argue Plaintiff did here.  *See* Tenn. Code Ann. § 9-8-402(a)(1).  And when a claimant notifies the Division, it amounts to filing a claim with the Claims Commission and triggers the waiver of the right to sue elsewhere for the same acts or omissions.  *Sumner v. Campbell Clinic PC*, 498 S.W.3d 20, 33 (Tenn. Ct. App. 2016).

In support of their motion, Defendants attach the affidavit of Rodney Escobar, the Director of the Division.  (ECF No. 9-1.)  Mr. Escobar states that Plaintiff filed a Petition with the Division for Benefit Determination ("Petition") "against the State of Tennessee for the death of Ms. Debra Johnson."  (*Id.*)  Defendants also attached the Petition itself.  (ECF No. 9-3.)  The

9

question, then, is whether this affidavit and Petition show that Plaintiff waived her claim against the Warden in his individual capacity.

To begin, the Sixth Circuit has interpreted Tennessee's waiver provision "expansively." *Bryant-Bruce v. Vanderbilt Univ., Inc.*, 974 F. Supp. 1127, 1135 (M.D. Tenn. 1997). It has explained that the provision requires waiver of *any* similar "federal cause of action." *White v. Gerbitz*, 860 F.2d 661, 662 (6th Cir. 1988) (emphasis added); *Hicks v. Norris*, No. 89-5939, 1990 WL 61171, at *1 (6th Cir. May 10, 1990) (mandating a complete waiver of any *companion* federal cause of action against individual state officers or employees) (emphasis added); *Bryant-Bruce*, 974 F. Supp. at 1136 (stating "filing a claim in the Tennessee Claims Commission waives all federal causes *arising from the same facts* against employees of the state") (emphasis added).

With this in mind, the Court here faces what should be an easy decision. Courts interpret the waiver provision broadly after a Plaintiff files with the Division; and here, Plaintiff allegedly filed with the Division. So Plaintiff waived her opportunity to bring this § 1983 claim against Warden Fitz in his individual capacity. But it is not so simple.

Plaintiff allegedly filed a worker's compensation[4] claim with the Division. And in comparing that Petition with the Complaint here, the Court finds striking differences. For example, Plaintiff alleges here that Defendants violated Johnson's 14th Amendment rights and committed many torts. (*See* ECF No. 1.)

As for the Petition, it refers to Debra Johnson's death, but the documents are barebones and provide little information on the nature of that claim. (*See* ECF No. 9-3.) And, if the attached documents are, in fact a claim, it is not clear who is bringing the claim. (*See id.*) What

---

[4] The Tennessee Claims Commissions Act does specifically include worker's compensation claims within its jurisdiction. TCA Section 9-8-301(a)(1)(K).

10

is more, in the Petition, there is no mention of any state employees at all.  (*See id.*)  The Petition simply states Johnson, "was found unresponsive in her State Housing and was pronounced dead.  This is currently under investigation."  (ECF No. 9-2 at PageID 33.)

In answer to the question about what caused the injury, the Petition states, "Ms. Johnson was sexually assaulted and strangled by escaped inmate Curtis Watson." (ECF No. 9-3 at PageID 35.)  At no point in the Petition does Plaintiff make any accusations against the State or its employees.  (*See id.*)  Instead, from what this Court can discern at this stage in the proceedings, the only commonality between Plaintiff's alleged Petition and the Complaint here is that they both concern the same factual basis—Johnson's death.  All in all, the Petition does not provide enough information for the Court to determine the claims it raises or who even brought it.

The statute states, that a claimant with the Division waives claims "based on the same act or omission, which claimant has against any state officer or employee."  § 9-8-307(b).  In reviewing the Petition for workers' compensation benefits, it is so sparse that the Court cannot say it is based on the *same acts or omissions* as alleged in the complaint here.

And even though Courts interpret the waiver provision broadly, at least one other court reached a similar outcome in a different case.  In *Meduri v. Univ. of Tenn. Health Science Ctr.*, the plaintiff argued that he did not waive all of his federal claims by filing with the Tennessee Claims Commission.  No. 04-2415 MA/P, 2005 WL 1551085, *8–*9 (W.D. Tenn. July 12, 2005).  He contended that some of his claims in federal court did not arise from the same "acts or omissions" as his TCC claims.  *Id.*  The Court there compared the petition in the Claims Commission with the complaint and agreed that Plaintiff had alleged at least some different

11

claims, and so he did not waive those. *Id.* Similarly here, Defendant has not convinced the Court that the alleged Petition and this Complaint arise from the same "act or omission."

And so the question remains, will this alleged Petition with the Division waive Plaintiff's claim here? To be sure, that is a distinct possibility. This is especially true considering that Courts interpret the waiver provision broadly. But based on the record here at this early stage, the Court cannot yet dismiss. The Court does not have enough information about Plaintiff's alleged claim with the Division to determine whether Plaintiff waived her claim here. And so for now, the Court cannot find that Plaintiff waived her claim against the Warden in his individual capacity.

### B. Analysis of Plaintiff's § 1983 Claim Against the Warden in Individual Capacity

But the Court still has to address whether Plaintiff states a claim under § 1983 against Warden Fitz in his individual capacity. Having rejected Defendants' motion under 12(b)(1) for now, the Court turns next to Defendant's alternative theory—to dismiss the case under Fed. R. Civ. P. 12(b)(6).

Under Rule 12(b)(6), a defendant may move to dismiss a plaintiff's complaint "for failure to state a claim upon which relief can be granted." To survive a motion to dismiss under 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Though a court will grant a motion to dismiss if a plaintiff has no plausible claim for relief, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). A court should dismiss a complaint only "if it is clear to the court that 'no relief could be granted

under any set of facts that could be proved consistent with the allegations.'" *Herhold v. Green Tree Servs., LLC*, 608 F. App'x 328, 331 (6th Cir. 2015) (quoting *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003)).

Defendants argue that Plaintiff bases her claim on Warden Fitz's actions as a supervisor. (ECF No. 10 at PageID 45–46.) Yet typically, supervisory officials cannot be liable under § 1983 for torts committed by individuals they supervise. (*Id.*) Defendants construe Plaintiff's complaint as merely alleging that Defendant Fitz could have made the prison and Johnson's housing safer. (*See id.*) But Defendant oversimplifies Plaintiff's claims.[5]

To explain, Plaintiff must allege that Warden Fitz "at least implicitly authorized, approved, or knowingly acquiesced in the alleged unconstitutional conduct." *Hays v. Jefferson County, Ky*, 668 F.2d 869, 874 (6th Cir. 1982). Plaintiff alleges that the Warden's role in assigning Watson trusty status led to Johnson's death, violating her right to personal security and bodily integrity under the 14th Amendment. (ECF No. 1 at PageID 8.) Plaintiff claims, "Warden Fitz [was] aware of Watson's violent and sexually aggressive history, and nonetheless granted him and allowed him to retain trusty status." (*Id.*) Plaintiff alleges that the Warden took an active part in granting Watson trusty status, which sufficiently alleges that the Warden participated in the alleged unconstitutional conduct. And construing the complaint in the light most favorable to the Plaintiff, her allegation is enough to survive a motion to dismiss at this stage.

---

[5] Defendants also argue that Plaintiff waived claims against the Warden in his individual capacity, because Plaintiff did not respond to Defendants' respondeat superior liability argument. (ECF No. 15 at PageID 71.) The Court disagrees. Plaintiff does not base her claim against Warden Fitz on respondeat superior liability; instead, she alleges he *participated* in making Watson a trusty. (*see* ECF No. 1 at PageID 8.) So here, Plaintiff does not solely rely on supervisor responsibility or "respondeat superior"—she alleges the Warden took an individual action.

And so, the Court **DENIES WITHOUT PREJUDICE** Defendants' Motion to Dismiss Plaintiff's § 1983 claim against Warden Fitz in his individual capacity.

## III.  State Law Claims

Next, the Court will address Plaintiff's state law claims against Defendants. Plaintiff sues for premises liability and for negligence under Tennessee common law. (ECF No. 1 at PageID 9–11.) And Defendants move to dismiss arguing that the State, the prison, and the Warden in his official capacity enjoy immunity from the state law claims under the sovereign immunity doctrine. (ECF No. 10 at PageID 43.) And Defendants argue that Tenn. Code Ann. § 9-8-307(h) grants absolute immunity to Warden Fitz in his individual capacity. (*Id.* at PageID 46.) Plaintiff, on the other hand, argues that Defendants are not immune under the Tennessee Governmental Tort Liability Act. (ECF No. 14 at PageID 65–66.)

Once again, Defendants' immunity argument presents a jurisdictional question. *See Russell*, 748 F.3d at 1046. And if Plaintiff fails to show that jurisdiction is appropriate here, the Court has to dismiss her state law claims.

### A.  Plaintiff's State Claims Against Tennessee, WTSP, and Warden Fitz in his Official Capacity

Defendants move to dismiss arguing that the sovereign immunity doctrine bars Plaintiff's state law claims against the State, the prison, and the Warden in his official capacity. And, as noted above, "[i]t is a well-settled principle of constitutional and statutory law . . . that the State of Tennessee, as a sovereign, is immune from suit except as it consents to be sued." *Stewart v. Tennessee*, 33 S.W.3d 785, 790 (Tenn. 2000). But the Tennessee Constitution provides that the legislature may *choose* to permit suit. *See* Tenn. Const. art. I, § 17. And in creating the Tennessee Claims Commission, the legislature did just that—it permitted plaintiffs to bring certain claims against the State. *See* § 9-8-307(a); *Stewart*, 33 S.W.3d at 790. The Tennessee

14

Supreme Court has described the Claims Commission Act as creating a "sweeping procedure for filing monetary claims against the state." *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000) (quoting *Hembree v. State*, 925 S.W.2d 513, 516 (Tenn. 1996)).

What is more, the Claims Commission has *exclusive* jurisdiction to hear those claims. Tenn. Code Ann. § 9-8-307(f); *Lowe v. Clift*, No. 1:06-CV-76, 2006 WL 8442894, at *3 (E.D. Tenn. Oct. 31, 2006); *Anderson v. Univ. of Tenn.*, No. 3:15-CV-00513, 2017 WL 499981, at *1 (E.D. Tenn. Feb. 7, 2017). So while Tennessee may have consented to suit within the administrative Claims Commission, it has not consented to suit in federal court. *Clift*, 2006 WL 8442894, at *3. The proper place for Plaintiff to bring state law claims seeking money damages against the State and arms of the State is with the Tennessee Claims Commission. As a result, the State (and WTSP and the Warden in his official capacity as "arms of the State") are immune from suit in this forum.

Against all that, Plaintiff argues that Defendants have no right to immunity under the Tennessee Governmental Tort Liability Act. (ECF No. 14 at PageID 65–66.) But Plaintiff's argument is off base. "The GTLA governs only claims against counties, municipalities, and other local governmental entities and does not apply to claims against the State." *Sneed v. City of Red Bank, Tenn.*, 459 S.W.3d 17, 24 (Tenn. 2014); *Lucas v. State*, 141 S.W.3d 121, 126 (Tenn. Ct. App. 2004) (The GTLA "is not and never has been applicable to the State of Tennessee or its agencies and departments."). In sum, Plaintiff's argument fails to show that this Court has jurisdiction over the state law claims against the State, WTSP, and the Warden in his official capacity.

The Court therefore **DISMISSES** the state law claims against those defendants because of the State's sovereign immunity.

### B. Plaintiff's State Law Claims Against the Warden in his Individual Capacity

Finally, Defendants argue that Tenn. Code Ann. § 9-8-307(h) immunizes the Warden against *all* state law claims. (ECF No. 10 at PageID 46–47.) That Section reads, "[s]tate officers and employees are absolutely immune from liability for acts or omissions within the scope of the officer's or employee's office or employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain." § 9-8-307(h)**.** And the Tennessee Supreme Court has explained that state employees are absolutely immune from liability for acts or omissions within the scope of their employment. *Shelburne v. Frontier Health*, 126 S.W.3d 838, 841–42 (Tenn. 2003). What is more, "[t]his immunity applies to state-law claims filed in federal as well as state court." *Walker v. Norris*, 917 F.2d 1449, 1459 (6th Cir. 1990).

Plaintiff sues for premises liability and negligence for actions the Warden took while on the job or "within the scope of [his] employment." (*See* ECF No. 1 at PageID 9–11.) Plaintiff does not assert that the Warden acted maliciously or willfully but argues instead that he acted negligently. (*See id.*) So Plaintiff sues the Warden for acts or omissions completed within the scope of his employment. *See* § 9-8-307(h). Thus, Section 9-8-307(h) bars Plaintiff's state law claims against the Warden in his individual capacity. The Court thus **DISMISSES** Plaintiff's state law claims against Warden Fitz in his individual capacity.

### CONCLUSION

The Court notes that this case arises from a most terrible tragedy. The Court sympathizes with Plaintiff and her family—people who should not have lost their loved one to senseless violence. That said, federal court is not always able to address all losses.

In the end, this Court lacks jurisdiction over most of Plaintiff's claims. The Court **DISMISSES** Plaintiff's § 1983 claim against the State, WTSP, and Warden Fitz in his official

16

capacity because of sovereign immunity under the Eleventh Amendment. Also because of sovereign immunity, the Court **DISMISSES** Plaintiff's premises liability and negligence claims against those same Defendants. And finally, the Court **DISMISSES** Plaintiff's state claims against Warden Fitz in his individual capacity under Tenn. Code Ann. § 9-8-307(h).

Thus, the only claim that survives Defendants' motion to dismiss for now is Plaintiff's § 1983 claim against Warden Fitz in his individual capacity. And so, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss.

**SO ORDERED**, this 6th day of May, 2021.

                                                  s/Thomas L. Parker
                                                THOMAS L. PARKER
                                                UNITED STATES DISTRICT JUDGE